UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NICOLE M., :
    Plaintiff, :
     :
    v. : C.A. No. 17-545JJM
     :
NANCY A. BERRYHILL, ACTING :
COMMISSIONER OF SOCIAL SECURITY, :
    Defendant. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This case is focused on the disability claim of Plaintiff Nicole M., a college-educated accountant who was thirty-six on her amended onset date. She seeks an award of Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act") because of cervical disc disease (exacerbated by obesity), depression, anxiety and attention deficit with hyperactivity disorder ("ADHD"). She claims that these impairments caused her to be disabled from March 24, 2010, (following her second disc surgery) until December 31, 2014, her date last insured. Before the Court is her motion to reverse the Commissioner's denial of her claim based on the decision of an Administrative Law Judge ("ALJ") that she could work during the period in issue despite retaining the residual functional capacity ("RFC")[1] to perform less than the full range of sedentary work.

The Commissioner does not dispute that chronic and persistent neck pain seriously limited Plaintiff's ability to work. Rather, the relevant question is whether Plaintiff's symptoms were so persistent and severe as to preclude all work after the second disc surgery until the date

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

last insured. Focused on that question, the Commissioner's counter-motion asks the Court to find that the ALJ properly applied applicable law to substantial evidence of record. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entirety of the substantial record, I find that the ALJ did. Accordingly, I recommend that the Court affirm the ALJ's determination and that Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 19) be GRANTED, while Plaintiff's Motion to Reverse (ECF No. 18) be DENIED.

I.      **Background**

From 1995 until June 4, 2008, when Plaintiff was involved in a work-related car accident, she worked as a college-educated accountant. Soon after the accident, she was diagnosed with neck sprain but returned to work in July 2008. Tr. 291, 349. When her symptoms returned a month later, an MRI of the cervical spine showed reversal of the cervical lordosis and disc herniation compressing the cervical cord, as well as mild central stenosis. Tr. 335-36. Based on the MRI and her symptoms, she was restricted to modified work duties until the first disc surgery (a fusion at C5-6) was performed by Dr. Steven Blazar on October 29, 2008. Tr. 370, 384-85. Within a few months, Plaintiff felt "exceptionally well," was able to go bowling and successfully returned to work, earning more than $25,000 in 2009. Tr. 182, 368. Plaintiff initially alleged in her disability application that she became disabled on June 4, 2008, the date of the car accident.

Plaintiff's apparent recovery from the first disc surgery was relatively short-lived. On April 21, 2009, Plaintiff saw Dr. Blazar for follow-up and reported that she felt "horrible" and "all of her ADLs are restricted." Tr. 361; see Tr. 893 ("She is miserable."). An MRI of her cervical spine showed a slightly more pronounced disc protrusion at C6-7, as compared with an August 2008 MRI. Tr. 354-55. Nevertheless, with no significant stenosis, "at most mild"

foraminal narrowing, and normal motor and sensory functioning, Dr. Blazar ordered neuromuscular/yoga therapy. Tr. 356-58, 606-10. Although there was some improvement and she again returned to work part-time, Plaintiff reported that her "neck is horrible." Tr. 358-59. Ultimately, on March 24, 2010, Dr. Blazar performed the second disc surgery, this time at C6-C7. Tr. 373-74. At the ALJ hearing, Plaintiff amended her alleged onset date from the date of the car accident to March 24, 2010, the date of the second disc surgery. Tr. 42.

Following the second disc surgery, based on referrals by Dr. Blazar, Plaintiff pursued an array of interventions to address neck pain, none of which seemed to be efficacious for longer than a short period. These included physical therapy, neuromuscular massage, medical marijuana, botox, acupuncture and injections. Finally, to avoid more surgery, Dr. Blazar referred Plaintiff to Dr. Susan Pollan, a pain specialist. Tr. 885. Dr. Pollan began a sequence of injections, which, at first, did not seem to afford relief. E.g., Tr. 1300. However, by September 2014, Plaintiff reported being "quite pleased," and, in November 2014, she acknowledged that "[t]hings are very good." Tr. 1442-46. By March 2015 (after the date last insured), Dr. Pollan reported to Plaintiff's primary care physician, Dr. Anthony Lombardi, that Plaintiff was "pain-free immediately after the injection and has remained fairly comfortable since." Tr. 1438.

Because the June 2008 car accident was work-related, a workers' compensation claim was prosecuted. In April 2016, this claim was resolved with a substantial lump sum payment (almost $250,000) based on the present value of lost future earnings. Tr. 201. Because of the workers' compensation claim, Plaintiff's ability to work was repeatedly reviewed by medical specialists. For example, the Donley Center performed a final physical therapy assessment in 2011, which recommended that she return to work with accommodations for her desk and work pace. Tr. 1477. Also in 2011, Dr. David DiSanto performed an examination and concluded that

she was "limited in her ability to carry out gainful employment with the left upper extremity," but did not opine that she otherwise could not work. Tr. 612. Orthopedist Dr. Sidney Migliori performed two independent examinations, one in 2010 (after the second disc surgery) and one in 2013. Both times, he concluded that Plaintiff could perform sedentary work at an ergonomically "good" work place, with limits on lifting and overhead activities. Tr. 1480-82, 1484-86. Similarly, Plaintiff's treating orthopedic surgeon, Dr. Blazar, took her out of work for specific treatment interventions, e.g., Tr. 1030 ("not working as per my instructions"), but also opined that she could work at other times, e.g., Tr. 907 ("ok clerical duties"); Tr. 1043 ("She will continue working.").

Throughout the period of alleged disability, Dr. Lombardi served as Plaintiff's primary care physician. He generally saw Plaintiff annually and more frequently for specific health issues. At virtually every appointment, Dr. Lombardi listened to Plaintiff's subjective report of neck pain, but did not treat her neck, largely leaving that to the specialists.[2] Nevertheless, his treating notes consistently include the results of his examination of the cervical area. These reflect findings that the neck was "supple," although he sometimes noted "tender post muscles" and occasionally observed "spasm." E.g., Tr. 1351, 1396. Otherwise, Dr. Lombardi made no negative observations based on his objective examination of Plaintiff's neck. E.g., Tr. 1358, 1372, 1379.

In addition to monitoring Plaintiff's cervical difficulties and treating other physical ailments, Dr. Lombardi also treated Plaintiff's complaints of depression, occasional anxiety and fatigue, for which he prescribed Celexa, Buspar and Adderall. Despite these prescriptions, his objective mental observation was consistently: "Psych in good spirits." E.g., Tr. 1365, 1377. He

---

[2] An exception is an appointment in November 2013, when Dr. Lombardi suggested massage and biofreeze for cervical pain. Tr. 1394.

4

never referred Plaintiff for mental health treatment with a specialist. Apart from a marriage counselor, during the period in issue, Dr. Lombardi's prescription of medication was Plaintiff's only mental health treatment. In 2015, after Plaintiff's date last insured, Dr. Lombardi apparently left the practice and Plaintiff turned to Quality Behavioral Health ("QBH") for mental health treatment. Tr. 1464. There, she saw (for the first time) a specialist, Dr. Terrie Mailhot, who is a psychiatrist. Over the course of six appointments, Dr. Mailhot switched the medications Dr. Lombardi had prescribed. Tr. 1464-69. She found Plaintiff to be on an "even keel," "doing well," and "calm and appropriate." Tr. 1468, 1470, 1473. Consistent with these findings, she assigned a Global Assessment of Functioning ("GAF") score of 80, reflective of no more than a slight impairment. Tr. 1469.

Following the filing of her application on July 25, 2014, Plaintiff submitted to a consultative examination with a psychologist, Dr. Adam Cox. Tr. 1433. Dr. Cox noted that Plaintiff's symptoms were described as "manageable" and diagnosed depression and anxiety caused by pain, with a GAF score of 55, reflective of moderate difficulties. Tr. 1435. Next, the entirety of Plaintiff's extensive medical record for the period in issue was reviewed by four state agency experts, a psychologist, a psychiatrist and two physicians. Collectively, they found that she suffered from severe impairments of the spine and affective disorders, but that her mental impairments caused at most moderate limitations and that she could perform at least exertionally light work, with postural limitations, and with additional limitations on overhead reaching in the opinion of one of the physicians. Tr. 88-113. Finally, shortly before the ALJ hearing, Dr. Lombardi, the primary care physician, submitted an opinion in support of Plaintiff's application. Tr. 1496. It contains two conclusory assertions: (1) since June 4, 2008, Plaintiff "meets or equals the impairment listing in Section 1.04"; and (2) beginning on June 4, 2008, through June 14,

5

2016 (the date of the opinion), Plaintiff "could not participate in sustained full-time competitive employment." Tr. 1496-97. The Lombardi opinion also contains an RFC limiting Plaintiff exertionally to less than sedentary work with only occasional use of either her hands or her feet.

Throughout the period in issue, Plaintiff was consistently counseled to lose weight, but struggled and remained obese. E.g., Tr. 1397.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the

Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

## III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart,

267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

**B.     Treating Physicians and Other Sources**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2). If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c). As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

## IV.    Analysis

Plaintiff's principal challenge to the ALJ's decision focuses on his rejection at Step Three of Dr. Lombardi's opinion "to a reasonable degree of medical certainty, that [Plaintiff] meets or equals the impairment listing in section 1.04." Tr. 1496.

To undermine the ALJ's determination that the Lombardi listing opinion should be afforded "minimal/less probative weight," Tr. 24, Plaintiff points to the ALJ's observation that Plaintiff "had some improvement" and argues that this amounts to a finding that she improved from a condition that met or equaled a listing.[3] See Tr. 27. She contends that this "finding" constitutes the ALJ's only "good reason" for discounting the Lombardi listing opinion. She asserts that it is tainted by error because it is wrongly based on the ALJ's improper lay determination that Plaintiff's medical condition improved so that the listing criteria were no longer met or equaled.

To overcome the conclusory nature of the Lombardi listing opinion, Plaintiff claims that Dr. Lombardi is a treating physician whose opinion should be deemed to be supported by the entirety of the more than 1,300 pages of medical records. Notably, Dr. Lombardi himself did not explain the basis for his listing opinion nor did he reference the medical findings on which he based it, nor do his treating notes reference any such medical findings. While his treating notes do contain objective findings from his examination of Plaintiff's cervical spine, these consist merely of occasional "tender post muscles" and "spasm," but that, otherwise, the neck was found to be "supple." E.g., 1351. Plaintiff does not point the Court to these findings or to any specific objective medical evidence of record, but instead argues that the totality of the record establishes that she suffered serious degenerative cervical disc/spine disease, which is sufficient to provide support for this otherwise wholly conclusory treating source opinion.

Listing 1.04 is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Headed "Disorders of the spine," it defines an array of disorders of the spinal cord "resulting in compromise of a nerve root." Id. These listing criteria may be established by specific symptoms that meet or

---

[3] The ALJ's actual finding states: "the medical evidence reveals that in 2009 she had some improvement but continued to experience neck pain despite conservative treatment . . . ." Tr. 27.

10

equal one of three alternative conditions. They are: (1) nerve root compression characterized by pain, muscle atrophy or weakness and sensory or reflex loss; (2) spinal arachnoiditis; and (3) lumbar spinal stenosis affecting the ability to ambulate. Id. Neither Dr. Lombardi in his listing opinion, nor Plaintiff in her argument, clarifies which of these three is the focus of the Lombardi opinion. The Court assumes, as the Commissioner suggests, that Plaintiff must be invoking Listing 1.04A.

To meet or equal Listing 1.04A, a claimant must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990). Those findings must be "at least equal in severity and duration to the criteria" for meeting the listing, which means that intermittent clinical signs will not suffice. 20 C.F.R. § 404.1526(a); see Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 784 (6th Cir. 2017) ("[M]edical equivalency is not a refuge for claimants who show only intermittent signs of impairment."), cert. granted on other grounds, 138 S. Ct. 2677 (June 25, 2018). The criteria in Listing 1.04A are very specific. They require "[e]vidence of nerve root compression," with associated "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Moreover, these abnormal physical findings must be simultaneously present for a continuous period of at least twelve months. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation.").

When examined against this backdrop, it is clear that Plaintiff's critique of the ALJ's approach to the Lombardi listing opinion suffers from an array of problems.

First, Plaintiff's argument is unavailing because the ALJ's "improvement" reference at Tr. 27 is totally unrelated to the "good reason" on which the Step Three analysis of the Lombardi Listing opinion is really based. See 20 C.F.R. § 404.1527(c)(2)-(3) (ALJ must provide "good reasons" to give treating source opinion minimal weight). The ALJ's decision sets out his actual "good reason," which is properly focused on the Listing 1.04 criteria and has nothing to do with "improvement." Tr. 24. Referencing the criteria, the ALJ found that Plaintiff did not meet or equal them because "she has not had findings on physical examination of persistent and significant neurological (motor loss with reflex or sensory loss) deficits in her upper extremities, or pseduoclaudication, or arachnoiditis, or finding of equal or greater clinical significance." Tr. 24. The ALJ's finding rests on substantial evidence not only because it accurately characterizes the medical record, but also because the ALJ relied on the state agency expert opinion from Dr. Roy Brown, who concluded that Plaintiff did not meet or equal a listing. Tr. 105, 114;[4] see SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Based on this well-founded "good reason," the ALJ concluded that Dr. Lombardi's opinion that the listing was met or equaled was "not supported." Tr. 24. Importantly, other than arguing that the Lombardi listing opinion should be deemed to be supported by the totality of the record, which established a serious cervical impairment (albeit one unlinked to the listing criteria), Plaintiff does not contend that there is any error tainting the ALJ's actual reasoning sequence.

---

[4] That Dr. Brown explicitly considered Listing 1.04 is evidenced by his entries in Box 16A of the DDT Form. Tr. 114; see Program Operations Manual System DI 26510.015.F-G (Impairment Code "7240" corresponds with Listing 1.04).

12

Second, Plaintiff's argument fails because the ALJ's "improvement" finding is based on Plaintiff's condition in 2009. In light of Plaintiff's decision to amend her alleged onset date from June 2008 to March 2010, this period of "improvement" is not within the period of alleged disability. Third, the ALJ's "improvement" finding is not unsupported. Far from being an improper lay judgment, it is well grounded in the evidence of record, in that the ALJ noted "improvement" during the period in 2009 after the first surgery during which Plaintiff was able to sustain employment, earning more than $25,000. See, e.g., Tr. 362 (Dr. Blazar notes in March 2009 that Plaintiff doing well and back to work).

Finally, there is no foundation for Plaintiff's contention that the ALJ acknowledged that Plaintiff did meet the listing criteria at some point, but then there was "improvement." This argument improperly conflates the listing criteria with the existence of a significant cervical impairment. In this case, the Commissioner has never disputed that Plaintiff's cervical disorder was very serious – to the contrary, the ALJ's decision adopts an extremely limited RFC to accommodate his finding that Plaintiff suffered from a significant disc disease. However, a finding that a spine disorder is severe and seriously limits functionality does not amount to a finding that the specific criteria of Listing 1.04 were ever met. The ALJ did not find that the listing criteria were ever met and, therefore, could not have found an "improvement" that amounts to recovery from a condition that met the listing criteria. And the same analysis dooms Plaintiff's contention that Dr. Lombardi's listing opinion should be deemed to be supported by the entirety of a record reflecting a serious cervical impairment – without medical findings equal in severity to each of the pertinent listing criteria, severe disc disease does not equate to a condition that meets Listing 1.04. See Sullivan, 493 U.S. at 531.

Plaintiff's other arguments may be given short shrift. Plaintiff's contention that the ALJ's RFC is tainted because the ALJ did not consider Plaintiff's obesity fails because the ALJ expressly considered obesity, as did the state agency physicians on whom he relied. Tr. 23, 27, 95, 109; see Leonard v. Colvin, C.A. No. 15-155S, 2016 WL 3063853, at *11 (D.R.I. Mar. 29, 2016) (ALJ properly considered obesity by identifying it as an impairment, stating that it had been considered and relying on state agency physician who accounted for obesity in RFC assessment), adopted, 2016 WL 3077874 (D.R.I. May 31, 2016). Also unavailing is Plaintiff's argument that the Court should reweigh the evidence in light of Plaintiff's substantial workers' compensation award and the other evidence reflecting the seriousness of her condition. Colon, 877 F.2d at 153 ("district court simply has no authority to reweigh the evidence and substitute its judgment for that of the Secretary's in denying a request to reopen"). When substantial evidence supports every link in the analytical chain underlying the ALJ's decision, as it does in this case, record evidence supportive of a different outcome is not a reason to overturn it. Dixon v. Berryhill, C.A. No. 17-77 WES, 2018 WL 1417729, at *8 (D.R.I. Mar. 21, 2018) (citing Rodriguez Pagan, 819 F.2d at 3).

Based on the foregoing, I find that the ALJ properly applied the applicable law to substantial evidence in the record, including that there is no error tainting the ALJ's Step Three finding. Accordingly, I recommend that the ALJ's decision be affirmed.

## V.  Conclusion

For these reasons, I recommend that Plaintiff's Motion to Reverse (ECF No. 18) be DENIED and Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 19) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 3, 2018